RACHEL E. KAUFMAN (Cal. Bar No. 259353)
KAUFMAN P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Counsel for Plaintiff and the putative Class*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONA WILEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FINANCIAL NETWORK, INC.,<br><br>Defendant. | Case No. 8:22-cv-00244-CJC-DFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE: July 10, 2023<br>TIME: 1:30 p.m.<br>CTRM: 9B<br>JUDGE: Hon. Cormac J. Carney |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on July 10, 2023 at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Cormac J. Carney in Courtroom 9B of the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, CA, 92701-4516 Plaintiff Wiley will and hereby does move the Court for class certification.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 23, 2023.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and papers on file, and upon such other matters as may be presented to the Court at the time of the hearing.

Respectfully submitted,

Dated: June 5, 2023                    By: */s/ Rachel E. Kaufman*
                                       Rachel E. Kaufman
                                       KAUFMAN P.A.

                                       *Attorney for Plaintiff and the putative Class*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

## **TABLE OF CONTENTS**

I. FACTS ............................................................................................... 1

II. THE NATIONAL DO NOT CALL REGISTRY CLAIM ................................. 5

III. THE CLASS ................................................................................... 7

IV. CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23 ............... 8

   A. Numerosity. ............................................................................... 8

   B. Commonality ............................................................................. 8

   C. Typicality ................................................................................ 10

   D. Adequacy ................................................................................ 10

   E. Predominance .......................................................................... 11

   F. Superiority .............................................................................. 14

V. CONCLUSION ............................................................................... 16

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
*Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-cv-02057-FMO-SP, 2017 WL
5720548 (C.D. Cal. Nov. 6, 2017) ..............................................................6

4
*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)................................ 10, 11

5
*Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015)................15

6
*Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320 (W.D. Okla. 2018).........12
*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016) ..........13

7
*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...................... 7, 15

8
*Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist.
LEXIS 52650 (N.D. Cal. Mar. 23, 2022).................................................12

9
*Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021) .............................. 14, 15

10
*Chesbro v. Best Buy Stores, LP*, 705 F.3d 913 (9th Cir. 2012) ...........................12

11
*Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582 (N.D. Ga. 2017).......................... 9, 12
*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259 (11th Cir. 2019)................................14

12
*Dunakin v. Quigley*, 99 F. Supp. 3d 1297 (W.D. Wash. 2015) ............................8

13
*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...........................10
*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) .............................7

14
*Golan v. Veritas Entert., LLC*, 788 F.3d 814 (8th Cir. 2015)............................ 8, 12

15
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................10

16
*In the Matter of Dynasty Mortgage, L.L.C.*, 20 F.C.C. Rcd. 4921 (F.C.C. 2005)....9,
14

17
*Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563 (W.D. Pa. 2017).................7

18
*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015) ...................12
*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019)................. 6, 9, 12

19
*Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694 (S.D. Fla. 2018).........15

20
*McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (S.D. Cal. 2019) ..............15

21
*Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449
(S.D. Fla. June 26, 2018)......................................................................13

22
*Selby v. LVNV Funding, LLC*, No. 13-cv-01383-BAS(BLM), 2016 U.S. Dist.
LEXIS 83940 (S.D. Cal. June 22, 2016) ..................................................9

23
*Swanson v. Nat'l Credit Servs.*, No. C19-1504-RSL, 2022 U.S. Dist. LEXIS 96953
(W.D. Wash. May 31, 2022) .............................................................. 9, 14

24
*Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496
(W.D. Wash. Feb. 12, 2021) ...............................................................12

25

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 .........................................1, 6

26

27

28

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

**Regulations**

47 C.F.R. § 64.1200 ............................................................................. 1, 3, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Mona Wiley moves to certify a class of consumers whose National Do Not Call Registry registered telephone numbers Defendant American Financial Network purchased as leads and repeatedly called without consent to market its mortgage banking services to in violation of the Telephone Consumer Protection Act's National Do Not Call Registry provision, 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)(2). This case is well-suited for class certification because the central and determinative issues in this case will all be resolved based on common, class wide proof, including documents, data, and testimony from Defendant AFN and Plaintiff's expert, and without regard for the experiences of individual class members. Class certification is therefore warranted.

## I.    FACTS

### AFN Provides Mortgage Banking Services to Homeowners

Defendant AFN is a residential mortgage banker. Complaint (ECF 1) at ¶ 16; Answer (ECF 24) at ¶ 16; *see* https://www.afncorp.com/loan-programs (last visited June 3, 2023). To promote its residential mortgage banking services it purchases consumer leads and makes telemarketing calls to them. Complaint at ¶¶ 17-18, 20; Answer at ¶¶ 17-18, 20.

### AFN Purchases Consumer Leads from Various Companies

One of the companies AFN buys consumer leads from is Giant Partners (which also goes by the name Listgiant). Declaration of Rachel E. Kaufman attached as Exhibit A at ¶ 2 and Exhibit 1, Defendant's amended responses to Plaintiff's first

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

set of interrogatories at nos. 3-4. Specifically, AFN buys "Nationwide" leads from
Giant Partners' "US Consumer Masterfile" that are associated with homeowners
with existing mortgages. Kaufman Decl. at ¶ 3 and Exhibit 2, Giant Partners
invoices. In connection with each such purchase, Giant Partners provides the exact
same term agreed to by AFN, Giant Partners' "Client":

> Client has requested data related to telephone numbers on a state or
> federal Do-Not-Call registry (DNC). Client has researched the TCPA
> and other DNC rules and will only use the data in strict compliance with
> the law, such as when Client has proper consent or other sufficient
> exemptions. Client assumes all risk related to contacting numbers on
> the DNC ….

*Id.*

In discovery, AFN has produced leads files it purchased from Giant Partners
that include 544,199 consumer leads in the aggregate. Declaration of Plaintiff's
expert Aaron Woolfson, attached as Exhibit B,[1] at n. 7.

Another company AFN buys consumer leads from is iLeads, which sells
"homeowner", "internet leads". Defendant's amended responses to Plaintiff's first
set of interrogatories at nos. 3-4; https://ileads.com/get-leads/ (last visited June 3,
2023). For the homeowner, internet leads for which iLeads purports to have the
consent of the consumer whose lead it is selling, iLeads provides its clients like AFN
a corresponding LeadiD that is generated by a third party called Jornaya that serves
as the supposed verification of the web interaction resulting in the homeowner's
provision of consent. Defendant's amended responses to Plaintiff's first set of

---

[1] Due to the volume of data and class member identifying information, the native
exhibits to Plaintiff's expert declaration are not being filed but are available for in
camera review on request.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

interrogatories at nos. 8-9 ("consent can be verified online through a 'unique id' number"); *see* Kaufman Decl. at ¶ 4 and Exhibit 3, press release announcing iLeads and Jornaya's partnership and available in full at https://www.prnewswire.com/news-releases/ileadscom-and-jornaya-announce-data-partnership-300607284.html (last visited June 3, 2023); Jornaya FAQ at https://docs.jornaya.com/docs/create-implementation-faq (last visited June 3, 2023) ("What is a Universal LeadiD, LeadiD, or LeadiD token? A Universal LeadiD, LeadiD, or LeadiD token is a 36 hexadecimal character identifier with the format XXXXXXXX-XXXX-XXXX-XXXX-XXXXXXXXXXXX (also known as a 'GUID' or globally unique identifier").[2]

In discovery, AFN has produced leads files it purchased from iLeads that include 167,793 consumer leads in the aggregate. Woolfson Decl. at n. 8. Of these only some have a corresponding Jornaya LeadiD evidencing purported consent. Woolfson Decl. at ¶ 35. The other leads have no associated information from where it can even be determined what website the consumer is purported to have interacted with—i.e., there is absolutely no evidence of consent.[3]

---

[2] Notably, like Giant Partners, iLeads imposes the burden on its "Client" to "comply with all applicable laws … including … DNC laws." iLeads invoices, Exhibit 4 to Kaufman Decl.

[3] AFN has failed to identify the source to it of other leads that it made telemarketing calls to, including the Plaintiff's lead, and has provided no proof of consent, *see, e.g.,* 47 C.F.R. § 64.1200(c)(2)(ii), for making telemarketing calls to any of those other leads. Woolfson Decl. at ¶ 35; Kaufman Decl. at ¶ 6 and Exhibit 5, AFN's responses to Plaintiff's first set of interrogatories at no. 2 ("Responding Party has not been able to ascertain the source of Plaintiff's telephone number.").

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

## AFN Calls the Purchased Leads to Promote its Mortgage Banking Services

AFN makes telemarketing calls to the leads it purchases using a single power dialer provided by a company call Xencall. Defendant's amended responses to Plaintiff's first set of interrogatories at nos. 3-4. Xencall's "Dialer for Outbound Sales" provides "Up to 28 lines per agent dialing simultaneously to connect … with leads."

https://get.readymode.com/engage/google/brand/?utm_source=google&utm_mediu m=cpc&utm_campaign=gg_nam_dg_search_brand&utm_term=xencall%20dialer &utm_content=xencall&gad=1&gclid=CjwKCAjwyeujBhA5EiwA5WD7_YNscB PdYZoolki30pEFVJKxGDyXoGlPGOU0qjDB4oXdVS_Zn7lQ_BoCBcAQAvD_ BwE (last visited June 3, 2023) (describing the "Call Center Software" provided by "readymode formerly xencall").

It makes these calls using identical scripts. Kaufman Decl. at ¶ 7 and Exhibit 6, Scripts.

It makes these calls for an identical purpose—to "pitch" AFN's mortgage banking services. *Id*.

And it makes these calls pursuant to consistent (but insufficient) telemarketing policies and procedures. Kaufman Decl. at ¶ 8 and Exhibit 7, AFN's Advertising Policies and Procedures at AFN-00005.

In discovery, AFN has produced call detail records for its telemarketing calls using Xencall's dialer that include 38,282 valid calls from AFN to 12,366 unique consumers in the aggregate. Woolfson Decl. at n. 11. Plaintiff's expert has analyzed these call records and determined that of the 38,282 valid calls to 12,366 unique

4

consumers in the aggregate, AFN made 4,391 calls to 1,298 telephone numbers that
(a) received two or more calls from AFN within a twelve (12) month period (b) were
National Do Not Call Registry ("NDNCR") registered for more than thirty (30) days
before receiving each of the calls. Woolfson Decl. at ¶ 34.

Mr. Woolfson has also determined that of these 4,391 calls:

(a) AFN made 3,001 calls to 896 telephone numbers that do not appear
in the Giant Partners leads files or the iLeads leads files AFN has
produced, including the Plaintiff's telephone number;

(b) AFN made 257 calls to 71 telephone numbers that appear in the
Giant Partners leads files but do not appear in the iLeads leads files;
and

(c) AFN made 150 calls to 39 telephone numbers that appear in the
iLeads leads files but have no corresponding "UniqueID" in the iLeads
leads files.

*Id*. at ¶¶ 34-35. And that is precisely the class Plaintiff seeks to represent: the 1,006
consumers with NDNCR registered number that AFN had no form of written consent
from, but still made 3,408 telemarketing calls to in the aggregate.

## II.    THE NATIONAL DO NOT CALL REGISTRY CLAIM

"Within the federal government's web of indecipherable acronyms and
byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It
means what it says. If a person wishes to no longer receive telephone solicitations,
he can add his number to the list. The TCPA then restricts the telephone solicitations
that can be made to that number. ... Congress enacted the law to protect against
invasions of privacy that were harming people.  The law empowers each person to
protect his own personal rights. Violations of the law are clear, as is the remedy. Put

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

The single claim Plaintiff is seeking to certify a class for is brought under 47 U.S.C. § 227(c), which provides a private right of action to any consumer who receives two or more "telephone solicitations" within a twelve month period to a phone number used for residential purposes that was NDNCR registered more than 30 days before the calls. 47 C.F.R. §§ 64.1200(c)(2), (e); *see* 47 C.F.R. § 64.1200(f)(14) ("telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person").

An entity can demonstrate it is not liable for calls made to numbers on the NDNCR only if it can show either that (i) the recipient provided prior express consent to receive the calls in a signed, written agreement or (ii) the violation was the result of error, and that, as part of its routine business practice, the entity maintains written procedures to comply with the federal regulations, trains its personnel in these procedures, maintains a list of numbers that may not be called, and uses a version of the national DNC list that is no more than 31 days old. 47 C.F.R. § 64.1200(c)(2)(i)-(ii).

The TCPA imposes up to $500 in statutory damages per NDNCR violation and provides for treble damages if the company acted "willfully or knowingly." 47 U.S.C. § 227(c)(5).

The TCPA "is essentially a strict liability statute" that does not require intent.

*Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-cv-02057-FMO-SP, 2017 WL 5720548, at *3 (C.D. Cal. Nov. 6, 2017). And as a remedial statute that was passed to protect consumers from unwanted telemarketing calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). "If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer." *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017).

### III.   THE CLASS

Plaintiff seeks certification of the following class:

> All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called on their NDNCR registered telephone number, (2) two or more times in a twelve month period more than thirty days after their number was registered on the NDNCR, and (3) whose telephone numbers either (a) do not appear in the Giant leads files or the iLeads leads files, (b) appear in the Giant leads files but do not appear in the iLeads leads files, or (c) appear in the iLeads leads files but have no corresponding "UniqueID" in the iLeads leads files.

Here, the class is defined based exclusively on objective criteria, including whether class members were called two or more times in a certain period on NDNCR registered numbers and whether Defendant obtained their NDNCR registered numbers from specific lead sources. Although the Ninth Circuit has expressly rejected an ascertainability requirement at the class certification stage, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017), in this case class members have already been identified based on Defendant's own records.

## IV.    CLASS CERTIFICATION IS APPROPRIATE UNDER RULE 23

Plaintiff's proposed class should be certified because it satisfies Rule 23(a) and Rule 23(b)(3)'s requirements.

### A. <u>Numerosity</u>

Rule 23(a)'s first requirement is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No specific number is required, but "[g]enerally, 40 or more members will satisfy the numerosity requirement." *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1327 (W.D. Wash. 2015) (citation omitted). Here, Plaintiff's expert Mr. Woolfson has analyzed Defendant's call and lead records and determined that the class includes more than 1,000 members. Woolfson Decl. at ¶ 35.

Numerosity is therefore satisfied.

### B. <u>Commonality</u>

Rule 23(a)(2) next requires "a common question of law or fact among the members of the class." The common questions to be determined in this action include:

- whether Defendant made calls to class members' NDNCR registered numbers;

- whether the calls were telemarketing;

- whether Defendant had consent to call;

- whether Defendant maintained adequate policies and procedures for preventing calls to NDNCR registered numbers; and

- whether class members have Article III standing.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

*See, e.g., Golan v. Veritas Entert., LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) ("the purpose of the calls is the critical issue in this case"); *Swanson v. Nat'l Credit Servs.*, No. C19-1504-RSL, 2022 U.S. Dist. LEXIS 96953, at *7 (W.D. Wash. May 31, 2022) ("In the unique context of the TCPA, alleging a violation of the statute itself satisfies the requirement of concrete injury in fact and is sufficient to support Article III standing."); *Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017) *reversed in part on other grounds* (commonality satisfied by the question of "whether all of the calls at issue for the NDNC class were made to telephone numbers on the NDNC registry"); *Selby v. LVNV Funding, LLC*, No. 13-cv-01383-BAS(BLM), 2016 U.S. Dist. LEXIS 83940, at *13-14 (S.D. Cal. June 22, 2016) ("In contrast, where the defendant obtained the class members' cell phone or fax numbers from a single source or from the class members under very similar circumstances, the issue of consent can potentially be resolved on a classwide basis. … Moreover, where a defendant seeking to defeat class certification …cannot demonstrate a single instance of prior express consent, the issue of consent does not preclude class adjudication."); *In the Matter of Dynasty Mortgage, L.L.C.*, 20 F.C.C. Rcd. 4921, 4924 (F.C.C. 2005) ("the safe harbor defense only applies if the seller is able to show … adherence to the enumerated do-not-call procedures ….").

TCPA claims, by their nature, involve large numbers of plaintiffs and a common course of conduct that affected each class member in the same way. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655-56 (4th Cir. 2019) ("The problems that so often plague class actions under Rule 23(b)(3) are wholly absent from this scheme . . . . Put simply, a plaintiff suing under § 227(c)(5) is likely to be

9

in the same position as a great many other people and can rely largely on common proof to make out his claim.").

Commonality is therefore satisfied.

### C. <u>Typicality</u>

Typicality is satisfied where the claims are based on the same legal theory. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Here, Plaintiff's and other class members' claims arise from the same legal theory. All of their NDNCR registered phone numbers were obtained and called by Defendant for the same purpose without any evidence of written consent to make the calls. And all of them are entitled to the same statutory damages. Defendant does not have any unique affirmative defenses as to Plaintiff Wiley. *See, e.g.,* AFN's responses to Plaintiff's first set of interrogatories at no. 2 ("Responding Party has not been able to ascertain the source of Plaintiff's telephone number.").

Typicality is therefore satisfied.

### D. <u>Adequacy</u>

Rule 23(a)(4) requires that the class representative can fairly and adequately protect and represent the interests of the class. Courts "must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). In considering the adequacy of counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the

10

action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff has no antagonistic or conflicting interest with the members of the proposed class. To the contrary, she has demonstrated her commitment to the class by actively participating in the litigation. She worked with counsel to develop the class's claims, responded to requests for production and interrogatories, will be deposed, and will attend trial. Wiley Declaration, attached as Exhibit C, at ¶¶ 2-8.

Just as Plaintiff is committed to this case, so too are her lawyers, who request appointment as class counsel. Plaintiff's counsel have extensive experience in the area of consumer rights and class action litigation. Plaintiff's counsel have been appointed as class counsel in multiple TCPA cases. Plaintiff's counsel have the resources necessary to conduct litigation of this nature. And Plaintiff's counsel have dedicated substantial time, effort and financial resources to the investigation and prosecution of the claims at issue, as evidenced through the discovery and expert testimony obtained and presented in this motion, and will continue to do so. Kaufman Decl. at ¶¶ 9-15.

Adequacy is therefore satisfied.

### E. <u>Predominance</u>

Rule 23(b)(3)'s predominance requirement is "readily met" because the common evidence demonstrates that Defendant made calls to NDNCR registered residential numbers, for the same purpose, without any proof of consent or adequate

11

policies and procedures for preventing such calls, and that class members were injured in the same way as a result. *See Amchem*, 521 U.S. at 625.

*First*, to demonstrate which calls were made to NDNCR registered numbers and otherwise represent violative calls, Plaintiff will rely on her expert Mr. Woolfson's aggregate analysis of Defendant's call records. Mr. Woolfson's analysis has determined the number of unique class members and qualifying calls to those class members. Other courts, including in this Circuit, have accepted this same approach from plaintiffs' experts in NDNCR cases. *See, e.g., Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309-JD, 2022 U.S. Dist. LEXIS 52650, at *9-11 (N.D. Cal. Mar. 23, 2022); *Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496, at *17 (W.D. Wash. Feb. 12, 2021); *Cordoba*, 320 F.R.D. at 598; *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 391 (M.D.N.C. 2015). This aggregate evidence will therefore allow Plaintiff to establish Defendant's TCPA violations on a class-wide basis, without individualized inquiries. *Krakauer*, 925 F.3d at 658 ("all of the major issues in the case could be shown through aggregate records").[4]

*Second*, Plaintiff will prove on a class-wide basis that Defendants' calls were telemarketing calls. Plaintiff will rely on common evidence regarding the commercial nature of the leads Defendant purchased, the manner in which the dialer Defendant used to call those leads functions, and Defendant's scripts for the calls.

---

[4] *See also Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ("if issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members … during the class notification process").

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

*See Golan*, 788 F.3d at 819-21 (8th Cir. 2015) ("the purpose of the calls is the critical issue in this case"); *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 917-18 (9th Cir. 2012) ("We thus turn to the calls at issue to determine whether they demonstrate a prohibited advertising purpose."). This evidence will confirm what common sense dictates: all the dialer-initiated calls made to purchased leads were telemarketing calls consistent with Defendant's script's direction to "pitch" its services.

*Third*, Defendant's consent and safe harbor defenses also lends themselves to common resolution.

First, there is absolutely no evidence that Defendant had written consent to call any class member. In fact, as all members of the class either (1) Defendant cannot identify where they obtained the class member's lead from (like Plaintiff's lead), (2) Defendant purchased the class member's lead from Giant Partners, which did not purport to have consent from the class member, or (3) Defendant purchased the class member's lead from iLeads notwithstanding the fact that it did not have a corresponding UniqueiD, which serves as the only means for demonstrating that there was consent from the class member. Every circuit and district court to evaluate a similar defense in a TCPA class action has concluded that in the absence of actual evidence of consent "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)." *E.g., Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *43 (S.D. Fla. June 26, 2018). Accordingly, Defendant's consent defense will be resolved based on the common lack of evidence of consent to call any class member.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

Second, Defendant's safe harbor defense likewise turns on common proof, in the form Defendant's written policies and procedures and testimony regarding its adherence (or lack thereof) to them, and not the conduct of any particular class member. *In the Matter of Dynasty Mortgage, L.L.C.*, 20 F.C.C. Rcd. at 4924 ("the safe harbor defense only applies if the seller is able to show … adherence to the enumerated do-not-call procedures ….").

*Fourth*, Article III standing for the proposed class is a common question because, by definition, all class members received two or more connected calls to their NDNCR registered number and suffered the same injury (i.e., an intrusion upon seclusion, occupation of their phone, and distraction) traceable to Defendant's conduct. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1269-70 (11th Cir. 2019); *Swanson*, 2022 U.S. Dist. LEXIS 96953, at *7 ("In the unique context of the TCPA, alleging a violation of the statute itself satisfies the requirement of concrete injury in fact and is sufficient to support Article III standing."). Standing in these circumstances does not turn on having felt subjectively wronged. *Id.*

As a result, common issues predominate.

### F. Superiority

Rule 23(b)(3)'s second prong requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A district court must evaluate this issue in comparative terms…." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304-05 (11th Cir. 2021).

Here, the proposed class satisfies the superiority requirement because "common issues of law and fact predominate over any individualized issues" and

14

"the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that a class action would be … superior …." *See Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 702 (S.D. Fla. 2018).

Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 178-79 (S.D. Cal. 2019) ("Courts recognize that given these damages relative to the costs of litigation, a class action is a superior means of adjudicating TCPA claims against a defendant."); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("In the context of the TCPA, the class action device likely is the optimal means of forcing corporations to internalize the social costs of their actions.").

Additionally, and although not required, certification of the proposed class is administratively feasible. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017) ("We have never interpreted Rule 23 to require such a showing …."). "A plaintiff proves administrative feasibility by explaining how the district court can locate the remainder of the class after certification." *Cherry*, 986 F.3d at 1303. Plaintiff's proposed class can be located using call and lead records Defendant has produced. Using these records and his proposed methodology, Plaintiff's expert Mr. Woolfson identified which of the phone numbers in the call logs prospectively qualify for class membership. Woolfson Decl. at ¶¶ 27-36. Class action treatment

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM

for Plaintiff's and the other class members' claims is therefore superior to the alternatives.

## V.   **CONCLUSION**

Plaintiff respectfully requests that this Court certify the class; appoint her as class representative and Kaufman P.A. as class counsel; and establish a deadline for submitting a proposed notice plan.

Respectfully Submitted,

Dated: June 5, 2023

By: */s/ Rachel E. Kaufman*
Rachel E. Kaufman (Cal Bar No. 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Class*

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 8:22-cv-00244-CJC-DFM