UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MONA WILEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FINANCIAL NETWORK, INC.,<br><br>Defendant. | Case No.: SACV 22-00244-CJC (DFMx)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [Dkt. 33 & 37] |

I.  INTRODUCTION

In this putative class action, Plaintiff Mona Wiley alleges Defendant American Financial Network, Inc. violated the Telephone Consumer Protection Act. (Dkt. 1 [Complaint, hereinafter "Compl."].) Before the Court is Plaintiff's motion for class

certification. (Dkt. 37 [hereinafter "Mot."].) For the following reasons, Plaintiff's motion is **DENIED**.[1]

## II. BACKGROUND

Defendant is a mortgage banker that makes telemarketing calls to offer consumers its lending services. (Compl. ¶¶ 16–17, 20; Dkt. 38-3 [Declaration of Charles Hobbs, hereinafter "Hobbs Decl."] ¶¶ 2–3.) To determine who to call, it purchases hundreds of thousands of consumer leads from companies such as Giant Partners and iLeads. (Mot. at 2–3; Opp. at 13; Dkt. 37-1, Ex. A [Amended Responses to First Set of Interrogatories] at 5; Hobbs Decl. ¶¶ 4–6.) Leads purchased from Giant Partners have been scrubbed against the National Do Not Call Registry ("NDNCR"), and leads purchased from iLeads come with "UniqueID" numbers that verify a person's express written consent to be contacted about loan products. (Hobbs Decl. ¶¶ 5–6.) Defendant also gets leads from sources such as past customers, consumers that directly inquire with Defendant, and other referrals. (*Id.* ¶ 9.) Defendant then calls its leads using a "single power dialer provided by a company call[ed] Xencall" to pitch its services. (Mot. at 4.) Defendant's Owings Mills, Maryland branch uses phone numbers 443-338-2506 ("X2506") and 443-333-5551 ("X5551") for these purposes. (Hobbs Decl. ¶ 11.)

In her Complaint, Plaintiff alleges that Defendant called her three times without her consent even though her phone number was on the NDNCR. (Compl. ¶¶ 19, 27; *see id.* ¶ 22.) Specifically, she alleges Defendant called her on November 10, 2021 around 1:00 p.m. and 3:00 p.m., and that she informed Defendant's agent on one of those calls "that she was not interested in the Defendant's services and disconnected the call." (*Id.*

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for July 10, 2023, at 1:30 p.m., is hereby vacated and off calendar.

¶ 25.) She further alleges Defendant called her again on January 21, 2022 at 2:58 PM. (*Id.* ¶ 26.)

Defendant's records indicate there were actually ten calls between Plaintiff and Defendant:

| Date/Time | Duration | From | To |
| --- | --- | --- | --- |
| 9/7/2021 10:18 | 0 sec. | 14433832506 | 6052515342 |
| 9/7/2021 10:26 | 10 sec. | 6052515342 | 14433832506 |
| 9/7/2021 10:28 | 67 sec. | 14433832506 | 6052515342 |
| 11/10/2021 12:04 p.m. | 5 sec. | 14433335551 | 6052515342 |
| 11/10/2021 2:00 p.m. | 3 sec. | 14433335551 | 6052515342 |
| 11/12/2021 8:46 | 4 sec. | 14433832506 | 6052515342 |
| 11/12/2021 8:55 | 0 sec. | 14433832506 | 6052515342 |
| 11/16/2021 6:00 p.m. | 1 min. | 14105963215 | 6052515342 |
| 11/16/2021 8:47 p.m. | 3 min. | 14105963215 | 6052515342 |
| 1/21/2022 1:58 p.m. | 42 sec. | 14433335551 | 6052515342 |

(Hobbs Decl. ¶ 13.) The first three calls occurred on September 7, 2021. First, Defendant called Plaintiff from X2506, but the call either did not connect or the representative did not leave a voicemail. (*Id.* ¶ 14.) Defendant does not know where it got Plaintiff's phone number, but it was not from Giants or iLeads. (*Id.* ¶ 25.) Eight minutes later, Plaintiff called Defendant back and left a voicemail.[2] (*Id.* ¶ 16.) Defendant's employee Melinda Freeman immediately listened to Plaintiff's voicemail and returned her call, with the call lasting 67 seconds. (*Id.* ¶¶ 16–17.) Though Ms. Freeman did not recall the conversation with Plaintiff, she stated that if Plaintiff in either her voicemail or their conversation indicated she did not want Defendant to contact her, Ms. Freeman would have put her on Defendant's internal do-not-call list. (*Id.* ¶ 18.) Since Plaintiff does not appear on Defendant's internal do-not-call list, she does not believe Plaintiff made such a request. (*Id.*)

---

[2] Neither party has a recording or transcript of the voicemail.

On November 10 and 12, 2021, Defendant's representatives called Plaintiff back four separate times, with the calls lasting 5, 3, 4, and 0 seconds. (*Id.* ¶ 20.) On November 16, 2021, Defendant's representative Dylan Dooley called Plaintiff at 6 p.m. (*Id.* ¶ 21.) Mr. Dooley remembers that Plaintiff told him she "was interested but could not talk at the time and requested a call back in a few hours." (*Id.* ¶ 22.) He called her back at 8:47 p.m. (*Id.* ¶ 23.) Although Mr. Dooley "recalled that ultimately [Plaintiff] said she was not interested" in Defendant's services, she "did not state to [him] that she was on a Do-Not-Call List, nor did she tell him not to call her again." (*Id.*) He had a specific recollection of the calls with Plaintiff given the late hour. (*Id.* ¶¶ 21–22.)

Finally, on January 21, 2022, Defendant's representative Victoria Hughes called Plaintiff, with the call lasting 42 seconds. (*Id.* ¶ 24.) Ms. Hughes does not recall the substance of the call, but she stated that if Plaintiff had asked not to be contacted again, she would have added her name to Defendant's do-not-call list, and she did not. (*Id.*)

Based on her experience, Plaintiff seeks to represent a class of people who allegedly received unwanted telephone solicitations from Defendant. Specifically, she seeks to certify the following class: "[a]ll persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called on their NDNCR registered telephone number, (2) two or more times in a twelve month period more than thirty days after their number was registered on the NDNCR, and (3) whose telephone numbers either (a) do not appear in the Giant leads files or the iLeads leads files, (b) appear in the Giant leads files but do not appear in the iLeads leads files, or (c) appear in the iLeads leads files but have no corresponding 'UniqueID' in the iLeads leads files." (Mot. at 7.)

//

//

## III. LEGAL STANDARD

Class certification is appropriate if, among other requirements, "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four requirements, which are often referred to as numerosity, commonality, typicality, and adequacy, are not merely a pleading standard. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *General Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982). Rather, a plaintiff seeking class certification has the burden to affirmatively demonstrate compliance with Rule 23 by proving its requirements in fact. *Id.*; *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). District courts have broad discretion to determine whether a class should be certified. *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001).

## IV. DISCUSSION

Class certification is not appropriate in this case because Plaintiff has not carried her burden to show that she is a typical or adequate representative of the class.[3] The purpose of Rule 23's typicality and adequacy requirements is to ensure that the plaintiff's interests align with the class's interests. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997) (explaining that "both [requirements] look to the potential for conflicts in the class").

---

[3] Because the Court finds that Plaintiff's claims are not typical of the class's claims and that she cannot adequately represent the class, the Court need not determine whether the other Rule 23(a) and (b) requirements are met. *See Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 383 n.2 (C.D. Cal. 2016).

Typicality and adequacy are not met, and class certification is not appropriate, when there are issues and defenses unique to the named plaintiff's circumstances that could "preoccup[y]" the named plaintiff and "skew the focus of the litigation." *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997); *see Hanon*, 976 F.2d at 508 ("A named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it" or when issues or defenses unique to the named plaintiff "threaten to become the focus of the litigation") (cleaned up).

That is the case here. The typical member of the class Plaintiff seeks to represent "hope[d] and expect[ed] that his or her privacy would be respected and not invaded by unwanted [phone calls] from [Defendant]." *Nghiem*, 318 F.R.D. at 382 (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) ("The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic telephone dialing systems] to communicate with others by telephone in a manner that would be an *invasion of privacy*." (emphasis added)). Although Plaintiff alleges Defendant's phone calls caused her "annoyance, nuisance, and invasion of privacy," (Compl. ¶ 28), Defendant presents evidence that Plaintiff invited Defendant to communicate with her. Its evidence indicates that on September 7, 2021, Plaintiff left Defendant a voicemail desiring a return call, and that on November 16, 2021 she asked Mr. Dooley to call her back late in the evening because she was interested in Defendant's services.

This evidence makes class certification inappropriate whether or not it is actually true that Plaintiff asked Defendant to contact her. If Plaintiff did ask Defendant to contact her, she is not a typical or adequate representative of class members who allege they did not consent to Defendant contacting them. *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 604 (C.D. Cal. 2015) ("Needless to say, a representative party is not typical

of class members if he consented to the challenged activity."). And even if, as she alleges, Plaintiff did not ask Defendant to contact her, Defendant will understandably spend substantial time at trial eliciting testimony and arguing that she did, likely to the class's detriment. *See Park v. Webloyalty.com, Inc.*, 2019 WL 1227062, at *12 (S.D. Cal. Mar. 15, 2019) ("While [plaintiff] may prevail on this defense, [defendant's] focus on it shows it will be litigated. While the defense is not unique to him—all other class members will also have to show their claims are timely—the facts of his defense are unique. He will likely be forced to expend time and effort on this, possibly to the detriment of the class."); *see Nghiem v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 383 n.4 (C.D. Cal. 2016) ("It does not matter whether Defendants will ultimately prevail on these defenses. What matters is that Defendants will assert these defenses, and they have a factual basis for doing so.").

"Because of [Plaintiff's] unique situation, it is predictable that a major focus of the litigation will be on a defense unique to [her]." *Hanon*, 976 F.2d at 509. For example, Defendant will likely call witnesses such as Ms. Freeman, Mr. Dooley, and Ms. Hughes, whose testimony regarding Plaintiff's call history and their conversations with her would relate to Plaintiff's specific circumstances and not to any other class members. *See Banarji v. Wilshire Consumer Capital, LLC*, 2016 WL 595323, at *3 (S.D. Cal. Feb. 12, 2016) (denying class certification when "the majority of the proposed class may suffer as Plaintiff will be engrossed with disputing [the defendant's] arguments regarding [his] individual case," specifically with respect to whether the plaintiff gave consent to defendant calling him). This diversion of time would prejudice other class members, who did not leave Defendant a voicemail or ask its representatives to call them back. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (explaining that a named plaintiff "who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative"). Evidence regarding Plaintiff's unique issues could also confuse the jury or create a risk that the jury would

develop unfair doubt over the class's claims based on the weaknesses Defendant argues exist in Plaintiff's claim.

Relatedly, if Plaintiff serves as class representative, she and her counsel "will have to devote most of their time and resources trying to refute" Defendant's contentions regarding Plaintiff's consent, which "skewed focus and diversion of resources will come at the expense of [Plaintiff's] ability to vigorously prosecute this case on behalf of the rest of the class and obtain monetary recovery for any members of the class who undisputedly had their privacy invaded when they received unwanted" calls from Defendant. *Nghiem*, 318 F.R.D. at 383. Plaintiff's unique circumstances could also deter her from vigorously prosecuting all class members' claims. Her weaker claim could give her incentive to settle for a lower amount than might be obtained when considering the stronger claims of other class members. *See Sherman v. Yahoo! Inc.*, 2015 WL 5604400, at **8–9 (S.D. Cal. Sept. 23, 2015) ("Plaintiff will not be a typical or adequate class representative because the manner in which she provided consent will only coincide with a select group of members of the putative class" and she may therefore "be incentivized to litigate the case in a manner favorable to her consent profile or to settle to the detriment of other class members"); *cf. Trenz v. On-line Administrators, Inc.*, 2017 WL 3084158, at *5 (C.D. Cal. Apr. 26, 2017) (explaining that typicality reinforces adequacy "by ensuring that the named plaintiffs' interests are sufficiently aligned with those of class members to assure that they not only can but will press each such claim to a full and equal extent"). This renders Plaintiff not a typical or adequate class representative.[4] *See*

---

[4] The Court also has concerns regarding how vigorously Plaintiff's counsel would prosecute this action on behalf of the class given its previous lack of diligence in this case. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020) (explaining that to determine whether representation is adequate, courts consider whether "the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class"). After Plaintiff filed her proof of service, Defendant did not answer by the deadline. However, Plaintiff took no action. Only after the Court issued an order to show cause regarding dismissal for lack of prosecution did Plaintiff seek entry of default (which default was later set aside). (Dkts. 11–12.)

*Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1034 (D. Nev. 2018) (finding typicality not met when there were unique defenses and issues related to the plaintiff's possible unauthorized access of the defendant's telephone system).

In sum, the major focus of the litigation in this case will be on issues and defenses unique to Plaintiff, not on the class's claims. *See Hanon*, 976 F.2d at 508. Plaintiff is not a typical representative of the class and cannot adequately protect the class's interests as Rule 23(a) requires.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for class certification is **DENIED**.

DATED:   July 3, 2023

_____
HON. CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE